WADE HARVEY et al. *v.* WM. R. MILES et al.

**Probate Court — Final Decree.**

A final decree of a Probate Court upon matters within its jurisdiction unappealed from and unreversed is conclusive and is not subject to attack in a collateral proceeding.[1]

**Will — Powers of Executors to Sell Property to Pay Debts.**

Where a will confers full power on the executors to sell any of the estate, real or personal, to pay debts, a sale of a part of the land of the testator to pay a debt incurred by the executors for attorney's fee for defending suits against the estate is valid and binding and will not be set aside at the suit of the devisees.[2]

D. M. Dulaney died in 1848, testate, devising his property to his two daughters, Mrs. Mary Sample and Mrs. Elizabeth Harvey, equally for life with remainder to their respective children.

[1]

Presumptions will not be indulged in favor of the jurisdiction; jurisdictional facts must appear affirmatively in the record. They cannot be proven by parol. Root *v.* McFerrin, 37 Miss. 17.

The judgment of a court in a matter within its jurisdiction, however erroneous, is final and conclusive until reversed, and it cannot be set aside in any collateral proceeding. Wall *v.* Wall, 6 Cush. 409.

Decrees of Probate Court in all matters within its jurisdiction are presumed correct unless the record shows to the contrary. Smith *v.* Denson, 2 S. & M. 326; Herring *v.* Wellons, 5 S. & M. 354; Henderson *v.* Guyott, 6 S. & M. 209; Prestige *v.* Pendleton, 6 Cush. 379; Hutchins *v.* Brooks, 31 Miss. 430; Crowder *v.* Shackelford, 35 Miss. 321.

A judgment is not merely *prima facie* evidence of its own validity, but conclusive where the record shows jurisdiction over the person and the subject-matter. Miller *v.* Ewing, 8 S. & M. 421; Wright *v.* Weisinger, 5 S. & M. 210.

A judgment which is merely erroneous and voidable cannot be impeached collaterally. Smith *v.* Bradley, 6 S. & M. 179; Work *v.* Harper, 2 Cush. 517.

The judgment of a court having jurisdiction of the subject-matter and the parties is conclusive so long as not reversed and cannot be attacked collaterally, however irregular and erroneous. This is true of a decree in favor of an administrator on a final settlement. Moore *v.* Ware, 51 Miss. 206.

A judgment merely erroneous and not void cannot be attacked collaterally. Parisot *v.* Green, 46 Miss. 747.

[2]

It is essential to the validity of a sale of either real or personal property made by an administrator or executor that it should be made in pursuance

The will contained the following provisions :

" 1. It is my wish that the negroes, horses, mules and stock of all kinds together with all farming utensils remain on the farm and my executors are to continue farming until they can raise a sufficient amount of money for the payment of all my just debts unless they should think it necessary to sell a portion of the above property for the payment of my debts.

" 2. I do furthermore confer on my executors full power to sell any of my estate either real or personal for the payment of debts should they think necessary."

· Before the death of the testator some suits had been filed in the Circuit Court against him, and he had employed William R. Miles to defend them, and after his death suits aggregating a large amount were filed and the executors made an agreement with said Miles to defend all the suits, agreeing to give him a

of a valid order of court, unless when by statute it is otherwise provided or where the will directs differently. Gelstrop v. Moore, 4 Cush. 206; Edmundson v. Roberts, 2 How. 822.

A suit had been instituted by the testator in his lifetime — the amount in litigation being about $48,000. At his death the counsel he had employed had removed from the State and the case was unprepared for trial. The executors being ignorant of the facts of the case employed an attorney at $5,000, contingent, however, upon success. The suit was gained and the legatees objected to the fee as exorbitant. Held, that the executors are only bound to act in good faith in such cases, and to exercise such care and prudence as a prudent and cautious man would exercise for himself; and that the employment and fee were proper. Noel v. Harvey, 7 Cush. 72.

An administrator will not be allowed credit for money paid to counsel whose employment was entirely unnecessary, owing to a sufficient number of counsel having been already previously engaged. Crowder v. Shackleford, 35 Miss. 321.

The allowance of commissions is intended as a compensation for his whole expense, labor, and responsibility of administering the estate and he is not, therefore, allowed to charge the estate with his expenses in employing lawyers to assist him in the administration of the estate, except that when he is compelled to bring suit for the estate or defend claims brought against the estate he is entitled to the lawyer's fee so expended. Satterwhite v. Littlefield, 13 S. & M. 302.

He will not be allowed expenditures for counsel fees unless he shows that the services were rendered for the benefit of the estate. Brandon v. Hoggett, 32 Miss. 333.

As to the question of the creation of a trust for the payment of the testator's debts, see Gordon v. McDougall, 84 Miss. 715, and the cases cited in the opinion of the court and the briefs of counsel.

fee of $5,000, contingent upon his defeating these suits, and he went into the courts and defended all the suits successfully, and the executors paid him the fee, conveying to him in part payment of same some lands that had belonged to the testator, Dulaney. At the April term, 1852, of the Probate Court of Holmes county, where the land was situated, the executors of Dulaney filed their final account with a petition asking for the allowance of same. An order of citation was made for all the devisees under the will, both life tenants and remaindermen. Among the items of credit claimed in this account was the item of $5,000 paid to said Miles by the executors. At the July, 1852, term of said court a decree was entered allowing the final account and allowing full credit for this item. Complainants never appealed from that decree.

At the September, 1884, term of the Chancery Court of Holmes county complainants, children of Mrs. Elizabeth Harvey and Mrs. Mary Sample, filed the bill in this case against William R. Miles and some parties to whom he had given mortgages on the land conveyed to him by the executors, in which they sought to have the deed given by the executors to Miles canceled as a cloud on their title. The bill alleges that in 1848, about a week after D. M. Dulaney's death, and before his will was probated, and before the executors had become acquainted with his affairs, said Miles fraudulently, and by misrepresentation of the real condition of the suits pending against the estate, obtained from the executors a contract to pay him a fee of $5,000 to defend them, when he had agreed with said Dulaney in his lifetime to render the same service for $500, said executors negligently making no investigation, and that the land in controversy was conveyed to him by the executors in part payment of this fee; that complainants were ignorant of their rights until some time in 1882, and as the papers relating to the administration of the estate were lost, they could not have learned sooner, and besides they were misled by Miles' misrepresentations.

Defendant Miles answered the bill, denying all charges of fraud. The cause was heard on bill, answer, and proof, and on final hearing a decree was rendered denying relief sought by complainants and dismissing their bill. It should be further stated that there were other debts due by the estate of Dulaney, and the executors sold some of the personal property to pay the debts.

APPEALED from Chancery Court, Holmes county, R. W. WILLIAMSON, Chancellor.

Affirmed, April 20, 1885.

*Attorneys for appellant, Gwin & Noel.*

*Attorney for appellee, C. V. Gwin.*

Complainants appealed from the decree dismissing their bill.

Brief of Gwin & Noel:

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

First. The answer admits, by not denying the allegation, that D. M. Dulaney's estate was more than sufficient to pay his debts. L. Noel's deposition proves the same thing. Of the forty negroes appraised, only about seven, and but a small part of the other personalty, were sold. The first clause of D. M. Dulaney's will provided for paying his debts from his farm, unless the executors should think it necessary to sell his property to pay his debts, in which event they were authorized to sell the negroes or personal property. The second clause gives them full power to sell any of his real or personal property to pay his debts. The two clauses taken together indicate his intention of their resorting first to the personalty.

"The exoneration of the real estate by the personal is an important doctrine of equity jurisprudence in administering estates, as well as being in full conformity with our general policy that whenever the intention of the testator does not clearly conflict with such an interpretation, real estate shall be applied to debts, legacies, and charges, only so far as the personal assets, the primary fund, prove insufficient, notwithstanding mere directions in the will to sell or mortgage for such purposes." Schouler on Executors and Administrators, § 512, and authorities cited.

It was, therefore, illegal for the executors to sell Miles the land, under the circumstances, with the large amount of personalty that there was on hand, for the appraisement was at low figures, as shown by the sale of the six negroes for $10,000, who were

appraised at $4,200. There was never a time when the executors could have said, " We think it necessary " to sell the land, or the part of it deeded Miles. The contingency on which they were authorized to convey never arose.

A power to convey, based on a contingency, cannot be exercised till the contingency arises. 60 Miss. 328.

Land is only liable for debts when the personalty is exhausted. 42 Miss. 449.

Second. The $5,000 fee to Miles was not Dulaney's debt. If any real debt at all, it was merely a part of the expenses incurred in administering on D. M. Dulaney's estate, and was under the law of 1849 (Hutchinson's Code, pp. 66, 67), no charge on the testator's realty, and there was no legal authority by which the executors could make use of land in paying such a debt. 44 Miss. 325.

Third. The second clause of D. M. Dulaney's will is as follows: " I do furthermore confer on my executors full power to sell any of my estate real or personal for the payment of my debts should they think it necessary."

No power is there given to sell the land for any other purpose than the payment of Dulaney's own debts; and the conveyance by the executors to Miles, as a credit on a debt of their own contraction, is void. * * *

Fourth. The power given to the executors by Dulaney's will only authorized, under any circumstances, in our opinion, a cash sale. The credit of $1,250 on the $5,000 fee did not constitute either a cash or credit sale, nor was it contemplated or authorized by the will. It was not a sale to pay Dulaney's debts, but a mere bargain for a credit on their own debt. We do not believe this court will sanction the action of executors in turning over to a creditor on his debt their testator's property, especially as it was a debt of their own contraction. * * *

In their final account the executors credited themselves with that $5,000 paid Miles. As to notice, the evidence shows that throughout the transaction, Miles knew more of it than did the executors. * * *

Brief of C. V. Gwin:

Two matters are involved in this controversy. The complainants seek: First. A recovery of part of the $5,000 paid to Wil-

liam R. Miles as a fee by the executors of Daniel M. Dulaney;
and, second, to set aside and cancel the deed of conveyance made
by the executors of Daniel M. Dulaney to William R. Miles.

The question of the payment of the $5,000 to William R.
Miles by the executors of Daniel M. Dulaney, as a fee due to Gen-
eral Miles for professional services, is long since *res adjudicata,*
not only as to these complainants, but as to all persons claiming
as distributees under the will of Daniel M. Dulaney.

The question of General Miles' right to his fee of $5,000, and
the liability of the estate of Daniel M. Dulaney to him therefor,
has been the subject of judicial investigation and determination
on three several occasions, and on each of these occasions was
adjudged a valid claim against the estate of Dulaney.

A very succinct and accurate statement of the facts attending
this $5,000 fee will be found in the statement of facts and
opinion in Noel et al. *v.* Harvey et al., 7 Cush. (29 Miss.) 72,
the record of which case constitutes a very large part of the
transcript in the cause now under consideration.     *     *     *

Among the items of credit claimed by the executors in their
final account was the item $5,000 paid to General Miles by the
executors for attorney's fees, and of which $5,000 constituted
the contingent fee in the Gooch-Dulaney suit.

At the July term, 1852, of said court, a decree was entered
allowing the final account and discharging the executors, allow-
ing the executors full credit for the $5,000 Gooch-Dulaney fee.

The complainants never appealed from or complained of this
decree on final settlement, but Leland Noel and Margaret, his
wife, and David W. Sanders and Benjamin W. Sanders, by
Leland Noel, next friend, filed their bill of review against Jones
Harvey, S. Sample et al., executors of Daniel Dulaney, to set
aside the decree allowing the final account, and setting up the
allowance of the $5,000 paid General Miles as one of the two
grounds relied on for reviewing the decree.   Noel et al. *v.* Har-
vey et al., 7 Cush. 72.

The bill of review was dismissed by the Probate Court of
Holmes, and from the decree of dismissal Noel et al. appealed
to the High Court of Errors and Appeals, where the  decree as
to the allowance of General Miles' fee of $5,000 was affirmed,
but reversed on other grounds stated in the case.   Noel et al. *v.*
Harvey et al., 7 Cush. 72.   *   *   *

The judge of the Probate Court of Yazoo county *did not concur* with the High Court of Errors and Appeals as to General Miles' fee, *reversed* the decision of that tribunal, and disallowed the fee on the ground of *" public policy."*

From this decree of the Probate Court of. Yazoo county, Jones, Harvey et al., the executors of Dulaney, appealed, the High Court standing by its former decision in Noel *v.* Harvey, reversed the decree of the Yazoo court in so far as it had disallowed the fee of General Miles, and said there was no such " public policy."
\* \* \*

Second. The right of action of the complainants for $5,000 is barred by the Statute of Limitations of actions. \* \* \*

But even were some of them not barred, barred by lapse of time — J. S. Harvey had been of age for more than sixteen years at the date of filing the bill, and it is well settled that when the cause of action is barred as to one it is barred as to all. Trawick *v.* Kelly, 60 Miss. 652; Tippin *v.* Coleman, 61 Miss. 516. \* \* \*

In no possible state of this case have these complainants any right to recover any part of the $5,000 paid to General Miles. Their remedy alone for a wrongful payment of the money to General Miles was against the executors, in the Probate Court, on final settlement — a remedy of which they availed themselves, and failed. \* \* \*

By the first and second paragraphs of the will full power and authority is given to the *executors* in the exercise of their *discretion* to sell any of the property, real or personal, of the testator, they should *think necessary* for the payment of the debts of the testator. \* \* \*

By the terms of the will, the *judgment, belief, or opinion* of the executors as to the necessity of a sale is made the test of their power of sale, and the only limitation and restriction which the courts require in the exercise of this judgment, opinion, belief, or discretion are just such as the testator himself would require; that the discretion be exercised *in good faith free from fraud.*

However mistaken that judgment may be to the mind of the court, still if it be exercised honestly and in good faith, and be not in itself unreasonable, the courts will not attempt any interference with its exercise; much less will it interfere with the rights of third persons acquired in good faith, in reliance upon

the exercise of the discretion.    Perry on Trusts, vol. 2, § 511;
Hill on Trustees, 489.    *    *    *

COOPER, J., delivered the opinion of the court.

More than thirty years ago the right of Miles to the fee of
$5,000 was conclusively settled by an allowance of the fee on
the final settlement of the estate of W. Dulaney.    By the will of
Dulaney the executors were given power to sell either the lands
or the personalty of the estate for the payment of the debts
of the testator.    There were debts, and the executors in the exer-
cise of the discretion confided to them sold both lands and per-
sonalty.    Under the power conferred the executors might have
sold all the personalty and retained the lands, or sold all the
lands and reserved the personalty, so far as was necessary for
the payment of the debts of the testator.

The fact that Miles, whose claim arose under a contract with
the executors, was paid from the sale of the lands instead of from
the proceeds of the personal estate, and creditors of the testator
were paid out of the personal estate, produced exactly the same
result as would have followed a payment to him out of the per-
sonal estate, and payment to creditors of the testator out of the
land sales.

We are not to be understood as deciding that the sale would not
have been valid if there had been no other debt than that due to
Miles.

Decree *affirmed.*